My name is Tilman Breckenridge from the William & Mary Law School Appellate and Supreme Court Litigation Clinic. I apologize. And I'm just here to introduce Laurel Plato, a third year law student at William & Mary who will argue on behalf of Mr. Ross. Excellent. Welcome. May it please the court, my name is Laura Blato and I represent the appellant, Mr. Ross. Police violated Mr. Ross' clearly established First and Fourth Amendment rights when they arrested him solely on the basis of a single satirical comment expressing his opinions on gun control. We ask this court to reverse the district court's grant of summary judgment for the following three reasons. First, Mr. Ross' statement was core political speech. None of this court's factors for identifying a true threat weighed in favor of finding that Mr. Ross' comment was actually a true threat. Second, police did not have even arguable probable cause to arrest Mr. Ross because his protected political remark was the only information the police had at the time of his arrest. And third, police are not entitled to qualified immunity because it is clearly established that police cannot arrest someone for simply asking a sarcastic question. First, Mr. Ross' statement was core political speech. None of this court's factors for identifying a true threat weighed in favor of determining that Mr. Ross' comment was actually a true threat. Let me start you with a question that I think is harder than it sounds. Is whether a speech is not protected because it's a true threat a question of fact or law? And I will say I read DJM pretty carefully and it is very ambiguous on this question. So I wondered if you have thought about it and looked elsewhere. Your Honor, it seems to be in some ways a mixed question of fact and law. It's that this court has made clear the facts and the context of the situation in which an alleged threat is made is very important to determining whether or not something is in fact a true threat. However, this court has, in its precedent, allowed lower courts to make that determination as a matter of law without sending the case to a jury to make the determination as to whether it's a true threat on the facts. It seems to me that's right, and DJM put the appellant's arguments as there's a disputed question of fact and then recited that the district court concluded, which is a buzzword for saying it was an issue of law. And I think usually the Supreme Court, which tends to make decisions without addressing this question, seems to take issues like protected speech as ones of law. And of course, that's significant because it means that both the district court and now this court can look at the evidence of record and conclude whether reasonable officers could reasonably perceive it to be a true threat. So I hear you agreeing that that's the issue. Yes, Your Honor. The issue here, specifically under this court's precedent in Doe, determining whether or not a statement is a true threat, this court in Doe defined a true threat as a statement that a reasonable recipient would have interpreted as a serious expression of an intent to harm or cause injury to another. In this case, Mr. Ross's sarcastic political remark, responding to a political post on Facebook, is a statement that a reasonable recipient would not have interpreted as a serious expression of an intent to cause harm or injury to another. Who's the recipient in this? How do we analyze that, particularly in light of the statement itself, but also the fact that it's on a social media post? Your Honor, I think that's a very important question here, particularly because this court views whether or not a true threat is determined from the perspective of a reasonable recipient, and the reaction of people who heard the alleged threat has been significant in determining whether or not a statement was a true threat. Here, the recipient initially would have been the original poster who Mr. Ross was responding to. Additionally, as the post was screenshotted before it was deleted and reshared on social media, the recipient at that point would be potentially anyone viewing the post. And it's important to note that in this case, although this post was disseminated beyond the initial few hours that it was originally posted for, none of those individuals who liked or commented on that post felt that Mr. Ross's comment created an emergency situation that would necessitate contacting the police or calling 911. So the reaction- Well, I thought the superintendent, once he or she was told about it, did react that way. As well as the police officer's wife, who saw it. To Judge Loken's question, the superintendent did contact police. However, he did not call 911, nor did he close schools. He had a passing thought of potentially closing schools the following day. However, he did not act on that. Moreover, the superintendent in this case is not necessarily a reasonable person from an objective standpoint, as someone in his position would have a particular sensitivity to a remark like this. To your question, Judge, the police officer's wife received the screenshot and a text message from her cousin, and the screenshot was the only piece of information in that text message. As Mr. Ross noted in his deposition, he had seen some of the comments that were being added to the screenshot on Facebook that indicated that people were reacting to his distasteful political remark in a way of calling him out for not agreeing with their particular political views on gun control. It's unclear, because there was no additional context to the screenshot that was sent to Officer Medlin's wife, whether or not her cousin was sending it pointing out, look at this guy making this ridiculous remark, or whether she was intending to send it to his wife to then communicate to her husband because she was concerned about it. Even she did not pick up the phone and call 911, and that's particularly important here to indicate that even her reaction was not one of emergency. Moreover, with regard to the Fourth Amendment issue in this case, probable cause, Officer Medlin never contacted Ms. Smith to determine why she had sent that post to his wife, and to determine what her reaction was to this post. Rather, the police officers, who, like the superintendent, would have a particular sensitivity to a comment like this, went ahead with escalating the post into some sort of investigation. Let me ask you this. Do you agree with the suggestion in the Martis case, which was cited by the district court in this case, that sort of the recent spate of mass shootings should inform our assessment of truth, that's, and the reasonableness of an observer's perception? Yes, Your Honor. The current event should inform the reasonableness determination here, and it's particularly important because Mr. Ross shares the concerns that people, other people in the community have regarding these mass shootings. His response, which one do I need to shoot up at kindergarten, is specifically targeted at calling out the language in the post stating that assault weapons are needed to prevent against government atrocities. His comment, although not necessarily most articulately made, is responding to that and highlighting that these automatic weapons are primarily used in those shootings. And his concern about those weapons being legal has to do with protecting schools and protecting our children. Just on the First Amendment claim, I couldn't help but wonder what damages are being sought. I don't even know if that's in the record, but it strikes me that most of the damages would come from the 48 hours in jail and the two months facing the criminal charges. None of that would have been approximately caused by a failure to recognize protected speech. So are we just talking sort of nominal damages for doing anything at all? Your Honor, below Mr. Ross in his complaint alleged $2,000 I believe per hour on the Fourth Amendment claim. The First Amendment claim would likely be nominal damages, but the First Amendment claim here is of particular importance because the implications that this case has if this court were to find that Mr. Ross's protected political speech was a true threat. The damage here is- Go ahead to the Fourth Amendment. I didn't mean more than pause with that. Yeah, so the damages here with the First Amendment though, just to be clear, would be the risk of chilling speech online, which has become the modern town square, almost the modern day public forum. And if police officers were able to arrest someone for engaging in protected political speech or taking a particularly distasteful remark out of context, it would effectively discourage people and chill people from engaging in those robust discussions online, which is something that the First Amendment is designed to protect. With regard to the Fourth Amendment claim here, what is particularly concerning is that police did not conduct any sort of investigation before arresting Mr. Ross. The time between Officer Medlin receiving the post from his wife's cousin and arresting Mr. Ross was a total of an hour and 45 minutes. Officers took the time to determine where Mr. Ross worked. And they themselves in their deposition indicated that they made the decision to arrest Mr. Ross before even talking to him to determine whether or not he- Well, but they got the explanation before they arrested, from him, right? And he admitted that it was his response to the post and then said it was a joke or, you know, satiric. The record indicates he may have had time to get those few words out before he was actually placed under arrest, but when-  The police officer did nothing other than arrest Mr. Ross and hear Mr. Ross' remark about the post to determine that he, in fact, made it. There was- They did not bother to talk to him before arresting him. They didn't interview him. They essentially walked in to his place of work, asked to talk to him, placed him in handcuffs, put him in the police car, and told him he was under arrest. Whatever statements he made between them walking into his place of work and being placed in the police car in handcuffs, here, immaterial, because the decision was already made to place him under arrest before he had an opportunity to really fully explain what was going on. There was no care. There was no questioning. The police officers did not stop and ask the questions before they placed him under arrest. Any information that they had for Mr. Ross was volunteered by him to avoid being taken to the police station. The last point that I want to make is that these rights are clearly established, and police are not entitled to qualified immunity because they cannot arrest someone for engaging in this protected political speech. Importantly, it's clearly established in the circuit that people have a right to exercise without facing retaliation for that speech. This applies to the First Amendment claim as well as the Fourth Amendment claim that was also clearly established in Watts. I see that I'm cutting into my rebuttal time. If there are no further questions, I will save the rest of my time. Thank you. Mr. Hill. Blake Hill for Appalese, Ryan Medlin, Tony Hanson, and Toby Freeman, may it please the court, counsel. Ross sued these defendants for arresting him for making these threats on a comment he made, which one do I need to shoot up a kindergarten, with respect to a meme posted showing several type of guns, long guns, including an AK-47 assault rifle. The district court found that these individual defendants did have at least arguable probable cause for arresting him based on this, on suspicion that he was violating Missouri statute regarding terrorist threats. The plaintiff's argument proceeds really on two, I think, flawed premises. One, that the officers were required to do more of a wholesale investigation slash miniature trial before arresting him. And also that the ultimate determination of whether or not this speech constituted a true threat or not is determinative of the question of whether or not they had arguable probable cause, or at least is determinative in the sense that they couldn't if his speech was in fact protected, which is not true. Both of these contentions are flawed. At their core, they ignore a key aspect of qualified immunity, and that is that these officers had to act based on what information was available to them at that time. And what would a reasonable officer do under those circumstances? Did they violate any clearly established constitutional right in taking the action that they did? How would you define the clearly established right here? I think that if you look to 2017 Supreme Court case, White versus Pauly, the court said you cannot define a clearly established right generally with high levels of generality. I think to say that someone can engage in free speech without retaliation, which is not truly retaliation in the sense that there's no animus here, but is a general statement that we all have first amendment right to free speech. Well, we know that's true. So how do we define it here? I think here, there isn't a clearly established right that's been asserted. I think it's incumbent on the appellant to come in and explain how the Eighth Circuit and the Supreme Court have established a clearly established right that we violated. I contend that there isn't a clearly established right that we violated. But if you looked at this as political speech, would it be clearly established? I think that- You can't go out and arrest somebody for engaging in political speech. Sure. Well, some of the cases cited in the briefing, citing to Watts, state very clearly that just because speech has political context doesn't mean that it's protected if it amounts to a threat. So the key seems to be does it amount to a threat, right? Only in the sense, well, for my officers, what matters is whether or not they could look at this speech and reasonable officers, could differ on the question of whether or not it constitutes a threat. We don't even have to actually determine that it was a threat for the district court decision to have been correctly entered. I think they had to have arguable probable cause. In the end, we have to have arguable probable cause. And I think very clearly, the only way that the district court could have possibly erred here is to find that our officers, either intentionally or with absolutely incompetence, conducted this arrest. I don't think that there's anything in the record that even remotely indicates that. In the analysis of whether or not it's a threat, it looks to me like four out of the five factors identified in Dinwiddie cut against you. What do you think of that? Do you think that's the appropriate way to measure it in a, as Judge Kelly was alluding to, a social media Facebook type posting? Well, so with respect to, well I'm not sure I understand the question with respect to the Facebook posting. Well, I'm wondering if the Dinwiddie factors are the appropriate factors for a situation like this where the posting is something that's going to be available to a broad array of people. Well, the appellant has treated the Dinwiddie factors almost as a specific balancing test or some kind of elemental finding that has to be made where all the factors have to be met to determine whether speech is protected or a true threat. That's not what Dinwiddie, that's not even the proposition that Dinwiddie holds. I mean, Dinwiddie, in fact, the specific verbiage in that case is we have recognized several factors. There was nothing exclusive about that list. In fact, Dinwiddie went to great lengths to express, this is not an exclusive list. And the presence and absence of any of these factors need not be dispositive. And so, the five Dinwiddie factors, to the extent that they apply here, and I don't think that the novelty of something being posted online necessarily impacts upon what standard you want to apply here, I do think that it draws sharp relief against maybe some of the precedent. For example, the appellant likes to say that their speech is akin to that in Watts. However, Watts is far different than what's happening here. A comment in real time among people in a jovial context at a political rally, referring to setting LBJ in his sights if he's going to be drafted is far different from posting, especially in the wake of Sandy Hook massacre online, what kind of gun do I need to shoot up at kindergarten? It's a far different- Let's go back to your assertion there was no clearly established law. In DJM, our court says Doe, in a circuit 2002 case, defined a true threat as a statement that a reasonable recipient would have interpreted as a serious expression of an intent to harm or cause injury to another. Now that was clearly established law, right? Sure, and so- Okay, so that's, if this posting doesn't satisfy that standard, then we have to reverse, right? I think if this posting doesn't satisfy the standard that a recipient couldn't have received it to be a threat- It leads us to the Fourth Amendment. And it would have to have been communicated to either the object of the threat or to third parties. No, at the time, the officers arrested him. At the time? And all the information they had was the text of the post and the plaintiff's response and his admission that, yes, I posted that, and it was a joke. Well, now, if a reasonable police officer with any kind of experience, training, and intelligence would have not seen this as a true threat as defined in Doe, then clearly established law says it was, they did not have arguable probable cause, right? I think- I mean, that to me is the case. Not that there's no established law, but that political threats or political context matters. But I mean, I think the question is only if no officer of reasonable competence could look at that and interpret it as a threat under the political context. No, no, no, no. If- I mean, it's an objective standard of a reasonable officer. Right, and if a reasonable- That doesn't mean 100 out of 100 reasonable. I mean, the fact that one reasonable officer might disagree with the 99 who thought this was obviously something less than terroristic. I think under the reasonable officer standard, an officer of ordinary competence could look at what was posted here, which that wasn't the only fact known. What was also known was that it was communicated to third parties. How do we decide that? How do we decide that? Decide what? That a reasonable officer could make the decision these officers did for genuine reasons or political reasons. I mean, the prosecutor might have been running for office and said, go get that guy. Well, I think based on the factor, well, based on the definition of true threat as set forth in the Eighth Circuit as being a recipient-oriented, whether the recipient responded to it or reacted to it as a threat. As a serious expression of an intent to harm or cause injury to another. As this circuit is held, interpreted by the recipient. I just read you the standard, yes, from Doe. Correct. What's not, that's the standard. What are you correcting me on the standard for? I mean, I read it from the, I read a quote of another Eighth Circuit case. Well, the officers in this case- It's consistent with Supreme Court cases, too. Including Virginia v. Black, Your Honor, I understand. The officers in this case were armed not only with the comment, but the fact that it had been communicated to third parties who then saw fit to contact the police. Yeah, the officer's wife. I don't think that that matters. Is it in the record whether they knew about the school superintendent's reaction, or was that- I don't believe that they did. No, it was later in the day. That was later in the day, absolutely. All they had was the officer's wife. I agree, and I don't think that they needed anything more than that. They had, the context is everything in these cases. You had, the context was this was post-armed. They didn't have any context. Sure they did. They had a post and a response. And a wife getting upset when a neighbor's cousin told her about it. This statement was made in the context of a public meme that was posted with different kinds of guns, including assault rifles, and the express question, which one of these do I need to shoot up at kindergarten? That was communicated to a third party. That third party contacted the police. The Missouri statute on making a terrorist, that requires only that- What third party? You mean the wife's cousin or whatever? Sure. Not the person that received it. I don't think that that matters, because the wife's cousin did receive it. Because this post was, this was publicly posted online. I think that to say that Paige Kimball, the person who posted the meme's receipt of this, is determinative of the question of whether it was received by third parties is incorrect. I think it was received by third parties as evidenced by the fact that they received it and then forwarded it to the police. And so, whether or not Paige Kimball saw fit to call 911 or not- The President's tweet to North Korea's dictator that he's got a bigger button, was a terrorist, could be arguable probable cause of a terroristic threat. I mean, if you put it up against the Missouri- This is what we're talking about. This context. Yeah, but here our context also- This context is on analysis. Pardon? Here our context also involves a Missouri statute that someone make these threats with reckless disregard for the fact that you could end up causing a school to shut down or an evacuation of a building, things of that nature. If you look at that from the standpoint of a reasonable person could look at a gun post and a question of which one of these I need to blow up at kindergarten, and the fact that that had been reported to third parties, who then contacted the police- This is not a reasonable person, this is a reasonable police officer. I think a reasonable police officer could- Well, they're different. A police officer, by training and experience and hopefully judgment, is not just someone, it's not CNN reading the President's tweets. Well, if anything, I think that one of the things that the appellant talked about was what they thought was the particular sensitivity of the superintendent. I think, if anything, the officers, regardless of whether they had a particular sensitivity, certainly had a duty to act on something that they perceived as possibly creating, in reasonable terms, a risk. Not if it was an unreasonable perception. Well, sure, but I'm saying it's a reasonable perception. I mean, the footnote in Doe specifically says, footnote four, we find it untenable in the wake of Columbine and Jonesboro that any reasonable school official who came into possession of JM's letter would not have taken some action. And I think the same thing holds true here. Any officer who sees on Facebook a posting of long rifles and the question of, which one of these do I need to shoot up in kindergarten, in the wake of what's even happened since then, including the Sandy Hook massacre, which is certainly on the appellant's mind, that no reasonable officer would look at that and dismiss it. I think that- That's different, though, isn't it? A reasonable officer to dismiss it versus a reasonable officer to arrest. I think if a reasonable officer looks at that statement and believes reasonably that that is implying a threat, which under the Missouri statute, an implied threat constitutes a threat, then he has probable cause under that Missouri statute to arrest that individual. And if not, if he ends up being mistaken because it turns out, in hindsight or later on, that Mr. Ross intended this to be some satirical comment that wasn't particularly funny- I don't think there was anything unreasonable about the manner of the arrest here. About going into his place of employment and flagrantly cuffing him and taking him to a police car and then just saying, well, all we're doing is going down to interview him. I think in light of the fact that there was probable cause to arrest him, that the way he was arrested was justified. I don't think anything about the- And your case law supporting that the manner of arrest doesn't matter? I'm not aware of that being an issue in the case, Your Honor, that he's claiming that the manner of his arrest is in any way offensive to his constitutional rights beyond the fact that he was arrested for having made this threatening comment. Given what has been claimed here and what has been placed before the court and what the district court ultimately ruled on, these officers did have reasonable probable cause to make this arrest. There was a Missouri statute that set forth very simple elements on what constituted a terrorist threat. You had this threat, no investigation, no further investigation was necessary to ascertain what the nature of the speech was here at issue because it was memorialized in this text that was then forwarded to the police department. So unlike some of the cases cited, including Kuhl for the proposition that a further investigation should have been made, there was no clearly exculpatory evidence here. There was no intent to harm the recipient of the post, right? There's no reasonable evidence of an intent to harm the person that posted all the guns in the first place. No, I don't think there was any, I do not. So there has to be a reasonable perception of an intent to harm somebody. Right, and that somebody in this case is a kindergartner. What about the context suggested that Planoff was about to go out and hurt a kindergartner? The fact that he said, what gun do I need to shoot up a kindergarten classroom? Thank you, Your Honor. That's it, that's okay. Time for a vote? Yes, Your Honor. Your Honor, if there are no further questions, we request that this court reverse the district court. Thank you. Very good, thank you. Ms. Hill, very nice job. I hope we can see you again in the future. And the case has been well briefed and argued, and we'll take it under advisement.